Good morning, Your Honors, and may it please the Court. I'm Jeremy Sporn. I represent the appellant Miles Nichols in this case. With me is my colleague Jeff Dahlberg. Mr. Dahlberg will be addressing the issue of the admission of expert testimony, and I'll be focusing most of my remarks on the suppression issue. I have a comment to make, which is splitting an argument like this is a really bad idea. I mean, you're doing it and we'll let you do it, but it really hampers both our ability to interact with the lawyers on the issues that we care about and your ability to answer our questions. But if you want to do it, you're doing it. Go ahead. Jeff Dahlberg I appreciate that, and we'll certainly take that into advisement. With respect to the suppression issue, the Court erred in at least several respects, both in denying a Franks hearing and in concluding that the search warrant established probable cause, as well as some other subsidiary determinations in the mix. But first, on entitlement to a Franks hearing, the evidence that the defense put forth was more than sufficient to make out a substantial preliminary showing of an intentional or reckless omission and that that omission was material to probable cause. The discrepancy between what was reported to the magistrate and the state of the informant's record in this case informs Judge Sotomayor What was the evidence of recklessness or intent? What exactly was that evidence? Jeff Dahlberg I think first Judge Sotomayor Just the omission? Is that all you're coming down to? Jeff Dahlberg That's not all I'm coming down to, but I think if that's all there was, that would have been enough by itself to make out a reckless omission. Courts have said that where the omission is critical, or clearly critical to probable cause Judge Sotomayor Well, was there proof that the officer knew  Jeff Dahlberg I don't think I could say there was proof, but I think the point I want to make is that there doesn't need to be proof. There just needs to be a substantial preliminary showing, and I think we got there. I think there are several things in the record that do point to the officer's actual knowledge of the informant's conviction for lying to police officers. We know that the officer looked into this person, Ms. Bowen. He looked into her background. He looked into her history. He was aware that there was an outstanding arrest warrant authorizing them to go arrest her. Judge Sotomayor And he mentioned that, right? Jeff Dahlberg I'm sorry? Judge Sotomayor And he mentioned that? Jeff Dahlberg He did, Your Honor, yes. That warrant stemmed from the same offense of conviction for lying to the police officers. He also mentioned a book Judge Sotomayor It wasn't for lying to police officers, though. It was for failing to repair or something? Jeff Dahlberg It was providing false information to a public  Judge Sotomayor But that wasn't what the warrant was. Jeff Dahlberg The warrant was in that case after conviction. Judge Sotomayor But it wasn't to be arrested for lying to a police officer, right? Judge Sotomayor It was for failing to appear. Jeff Dahlberg It was for failing to appear or for failing to pay a fine, something like that, after she had been convicted. But I think it's critical that the warrant arose in that case. It didn't arise out of a separate case. Second, the officer was aware of a booking photo of this person, Ms. Bowen. So I think that shows on his part some steps he was taking, some inquiry he made into her background. We don't have  Judge Sotomayor What's her standard of review here? The district court found that he didn't know and essentially he shouldn't have known. And then what do we do with it? Jeff Dahlberg The standard of review overall is de novo with respect to certain factual determinations that the court may have made to support that. That courts have said might be reviewed for clear error on appeal. But Reeves and other cases underscore that overall the standard of review is de novo. Judge Sotomayor As to the facts that the court found? Jeff Dahlberg As to facts only or factual determinations by themselves, clear error. But mixed questions of fact and law, de novo. Review of the denial of the Franks hearing overall, de novo. And a review of the denial of the suppression motion overall, de novo as well. There's one more indicia that I think speaks to the officer's knowledge that Ms. Bowen had this conviction. And that was he mentioned an association with a gentleman named Tyler Combs. I think that comes about in the officer's knowledge because the person that Ms. Bowen lied about, their whereabouts not being present in a house that was Tyler Combs. So I think when we take all of this together, that should be enough by itself to constitute a substantial preliminary showing. Judge McAnany I thought you've emphasized the officer's being reckless was sufficient to trigger the need. So it seems to me he clearly was reckless. He was aware that there was a risk she might have a criminal history that would be relevant to the credibility determination. That seems to me to end that issue. I guess you were going to get to in a minute, I guess, the question whether, because I thought the district court also found, well, even if the conviction had been included, even if the officer had done what perhaps he should have, there still was probable cause given how much kind of cooperation existed for what, is it Ms. Bowen, what Ms. Bowen had told them. And I guess that seemed to me the stronger ground for the government. I'd love to hear what you have to say in response to that. Chief Judge Roberts Certainly, because I disagree with that determination as well. Even if you consider the conviction and what that does to her reliability, because I think it destroys it altogether. But in terms of Justice Breyer Just to be fair to the government, it certainly causes one to have doubts about how you can't just trust what she says at face value. But that's not the end of the story, right? The officers had a bunch of other pieces that fit together that made it seem like, you know what, on this occasion, at least, she probably is telling the truth. And that's what I think the district court ultimately said, is that, well, the issuing magistrate, even had he or she been provided with this is what the district court said and I disagree with it. First, in terms of the factors that courts use to assess the reliability of an informant, they start out looking at the history of providing reliable information. Justice Kagan I don't know if I, I mean, you can go on that way. I don't know what the difference is between an informant and a non-informant. I mean, the fact is that she, I mean, she was herself being arrested. She was seen at the place. She, so I don't know whether we call her an informant or not. It doesn't seem offhand to fit very well. But I suppose it's as good a rubric as any because we don't have one. So go ahead. Justice Breyer I think it does qualify as an informant activity. They observe her go into a room. They observe her come out of a room and she later reports to them that she bought meth in that room from a particular individual incriminating the target or suspect in the investigation. So I think that that does qualify as informant type activity. Justice Kagan But in the course of them arresting her for what she did, for being in that room and what she did in the room. Justice Breyer Well, she was arrested on the outstanding arrest warrant, Your Honor. Justice Kagan Right, but doesn't an informant, at least in the context as we know it in most cases, mean somebody who has a history of working with the government, right? Justice Breyer I think it can. I don't think it's a necessary predicate to considering whether someone is an informant or just a citizen witness or a bystander. And that's the qualification that the government tried to make Ms. Bowen out to be. I'd like to just address the issue of corroboration because that I think was the sense I was getting from the Court that it wanted to hear on other factors here that sort of corroborate Ms. Bowen's information. Justice Kagan Can I ask that you get to the instructional issues so just as a, because I'd like to hear them, but finish what you're doing. Justice Breyer Sure. With respect to corroboration, all the officers could corroborate was that Ms. Bowen was there and she was present and that she went into the room. They didn't know what happened in the room other than what she told them. They didn't search her beforehand. They didn't search her afterwards. They didn't engage in constant surveillance. All they really knew was that, was what she purported to tell them. And I think that's different from the kind of court Justice Kagan Are they allowed to take into account the fact that they knew that this guy had been drilling drugs for years? Is that a legitimate consideration as to why this person was going into their room? Justice Breyer I don't know that they could Justice Kagan On a probable cause basis? Justice Breyer I don't know that we could take that as a given or that it happens to be true in the first place. Mr. Nichols had no convictions for drug dealing. So the police came forward saying that he's a known drug dealer. I'm not sure where that came about, how they prove it, or how it really can fairly enter into the mix at all. Justice Breyer He had no convictions? I thought he got, didn't they file an 851? Justice Breyer They did. They did. Five of those were for So he didn't have a conviction for distributing or delivering narcotics, yet he was a known drug dealer, according to the police. And I'm not sure how they got to that information. I don't think I should speculate on it too much. Just to come to the conclusion on the point, whatever the police officers were able to corroborate in terms of their own observations is different from the kind of corroboration that could usually serve to offset or ease concerns about an informant's reliability. Well, also, when they arrested her on the warrant at the house she was staying in, and then they gave her random orderings and they asked her what she was doing there and so on. She told them that she'd bought marijuana and she said that a part of it was in her backpack, right?  Yes. Right. And then they, is that when they looked in the backpack? Well, that's a discrepancy. According to the police, they didn't look in the backpack until they got the search warrant that authorized them to look at it. Mr. Walter Skirch and the homeowner testified that they looked in the backpack before then and we moved at trial to reopen the suppression hearing on that issue and the court denied it. So the government's not relying on that as corroboration, presumably because this agent happened until later. I think that's right, Judge, yes. I see that my time's dwindling. I heard what the court said. I would like to give Mr. Dahlberg the chance to make his arguments. But is this the reason why this doesn't work? Because I'd much rather hear about the instructions than I would about the expert. Okay. To me, the instructions have issues, both with regard to the furtherance issue and with the lesser-included offense. I take Your Honor's point and I will address the issue of the lesser-included offense and the denial of that instruction. I think it comes down to critical language in a case called United States v. Gentry from the Eighth Circuit that we cited in our papers, where the court said, even if we describe the evidence of intent to distribute as overwhelming, even if it is overwhelming, all that really does is it permits, but it doesn't compel, a finding on the jury's part of intent to distribute. But this is what I don't understand. On the theory, I mean, this case is going to a jury. The evidence, and I should tell you, this is a friendly question, so don't start. On the evidence that is said to be too strong to allow the lesser-included instruction, I mean, there shouldn't be any trial at all. The notion seems to be that there's overwhelming evidence that he was possessing with intent to distribute, but the jury theoretically could disbelieve that or else we wouldn't be having a trial. So therefore, why are we looking at the strength of that evidence as to the question? I'm sort of questioning the standard. I don't understand it. Because the whole premise has to be that the jury could disbelieve some or all of the evidence, right? Right, certainly. And we were asking them to disbelieve aspects in the record that may be pointed to intent to distribute. We were arguing that they should. So they could believe, for example, with regard to his confession of dealing two pounds a week that he was just blowing his own horn and it wasn't true. Certainly, yes. That was what we were arguing. That it's not a question of weight of the evidence, it's whether the evidence is in dispute and it's whether a jury could make a rational finding acquitting the defendant of possession. And even if it's not in dispute, they can still disbelieve it. Certainly, yes. And I think the cases where it's unequivocally denied, we're dealing with kilograms and kilogram quantities. So no one's going to stand up and say, yeah, I possess 20 kilograms of cocaine for my own personal use, simple possession. So I think that's a different universe. And this case is in between the two extremes that the Hernandez Court and the Gentry Court talked about, about where an instruction on a lesser included offense should be given. I would like to reserve the remaining time I have for rebuttal. Thank you. Well, I'll give you the extra time. Go ahead. You should have three minutes. Was that your proposition? Yes, Your Honor. All right. Would Your Honors like to hear on the issue of the expert? I took Your Honor's point. About where the issues lie. Thank you. With respect to the testimony of Agent Frank Black or Detective Frank Black, we wanted to make three points. And one of those was that the, well, the district court's admission of that testimony has to be reversed. The first reason why is it's not actually helpful to the jury. The federal rules of evidence are clear that, and this court has been clear, that expert testimony is not necessary if it concerns a matter that anybody could figure out for themselves. And that's from Seschilly, which is a Ninth Circuit case. And in other cases that have admitted this type of modus operandi testimony that the government sought to admit here, it's to explain the sort of seemingly innocent activities that are common in sorts of large-scale drug conspiracy cases. So things like using code words. Things like acting as a lookout. Things like being an unknowing, arguing that you're an unknowing visitor to a certain location. That wasn't the case with Detective Black's testimony. Detective Black— At the core of what he testified to that might, wouldn't, I wouldn't know if I were on a jury was, and I know you take issue with the substance of it, but these questions about how much would a user use and so on, I mean, that doesn't seem to become a knowledge, does it? You did cross-examine him. I mean, he did say, I mean, he was unusual for one of these people, because I do have problems with this kind of testimony, in that he was incredibly well qualified and he actually explained why he knew about the drug quantities and so on. He was unusually knowledgeable, it seems to me. He even did have some medical training, as I understand it. So he had a, from the record indicates he had a background. He started out his career as an EMT. I would respectfully disagree that he was unusually qualified. I think that I take your point— Often they just put up the guy who did the investigation, who has no particular, as the expert will, has no particular— That's correct, Your Honor. But I think that the discrepancy that we see between this case and other cases in courts around the country that have accepted this type of expert testimony underscores that, and this goes to more of the reliability point, that his testimony regarding dosing wasn't reliable. I would respectfully disagree that his testimony on that point was, demonstrated a higher degree of qualifications than other expert witnesses and I think that's because he didn't actually explain how his expertise or how his experience led to those conclusions that he made on dosing and how his expertise or his experience gave him a sufficient basis to draw those conclusions. Are you saying his conclusions were incorrect? I'm saying they were completely unreliable, Judge. Unreliable because of what? Because the federal rules of evidence say that we have to apply the same standards of scrutiny for an expert who's qualified based on their experience as somebody who's from, comes from a more scientific background or is testifying as to a scientific discipline. So the Daubert factors that apply to a scientist may not necessarily apply one-to-one for an expert qualified based on experience, but we do have to, there are certain questions that the courts need to ask and the Advisory Committee on Federal Rules of Evidence has been clear on this. How does Detective Black's experience actually lead to his conclusions? What assurances does the court have that he's applying his experience in a reliable manner? Detective Black talked about having conversations with drug users. He didn't identify any participation in controlled studies. He didn't talk about personal experience. He didn't indicate who he actually interviewed or spoke with. What assurances we have that that would be a statistically meaningful sample or an accurate sample of individuals? And so what we have here is a detective who is basically summarizing the fact witness testimony from Officer Florence and Officer Dubois and the other officers who testified in this case as fact witnesses and essentially giving the added approval of an expert to that. And I see that we are over our time. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Megan McCalla on behalf of the United States. I'll start with the suppression issue where the majority of the time was spent. Just before you get into the merits of the appeal, can I just ask about the filing of the 851? Does your district have just a different policy about when to do that? This struck me as a case that's not even close to a case where someone should get life. Doesn't he get life without parole for this? Yes, Your Honor. That is correct. Why did you? I don't understand. Why would you do that in this case? Well, Your Honor, I can answer that question. But the answer would be for statements that would be outside the record in this case if the Court wishes me to continue. Well, I'm just . . . yeah. I don't want you to violate any internal DOJ, you know, confidences. But I'm just curious. This just . . . from the districts that I'm used to seeing cases come out of, I don't . . . I've never seen someone get an 851 in this kind of case. Did you guys have a different policy in your district? That's all I'm curious about. No, Your Honor. I can't speak to the policy. However, the 851 was filed at the outside of the case in order to put the defendant on notice about the possibility that that could be the result of . . . So what you're essentially saying is you charged him to get a plea and he didn't get . . . he didn't plea. No, Your Honor. That's not . . . that's not what I'm saying. But the reality is, is that if there's a potential that that punishment will be sought, the notice has to be provided. Well, I know, but that's not an answer to the question is why did you give the notice? I mean, why did you make the decision that that penalty would be sought? And I understand that that's an internal decision. I mean, I asked a similar kind of issue in Alaska some years ago. Because some districts just don't do it. Yes, Your Honor. Again, I could try to provide an answer to you, but again, it's going to incorporate a number of issues that are outside the record to include the defendant's criminal history. A lot of the information that was contained in the PSR pertaining to the defendant's history and what the defendant has done over the course of his criminal career. I gather that there's nothing in the new statute that pertains to him? No, Your Honor. That's correct. To address the suppression issues, Your Honor, the court is correct to note that the facts that the district court found are governed under a clearly erroneous standard. And the courts are, Your Honor, are correct to note that the district court made a factual finding that the officer did not commit any reckless or intentional omission from the affidavit in this case. Well, it seems to me it's obvious he was reckless. You've determined that somebody, I mean, the way they identified her was from a booking photo, so that tells you right there she has some probable criminal history. You know that that is going to be highly irrelevant to any magistrate who's going to be reviewing the affidavit, given how heavily it relies on what she told the police. So of course you would, if you were any responsible officer, of course you would do some kind of a check to see, maybe there's something I need to alert the magistrate to. And so if your officer here didn't do that, well, he was certainly subjectively aware of a risk and disregarded it. That seems to me the definition of recklessness, whether he knew for a fact she had this particular conviction or not seems to me not to be the main issue. Well, I would disagree with the court in a number of instances there. One, as the government cited in its brief in Ewing, once the officers have established probable cause for the search warrant, they need not continue to investigate. At that point, the officers, based on their observations at the M Hotel, their interaction with the defendant, his statements about who was there and who wasn't, their reasonable inference that that was a lie following Ms. Bowen to her residence, that investigation at that point, and once they obtained her statements that confirmed that she had in fact purchased methamphetamine from the defendant just before, was sufficient for probable cause at that point. But you're not relying on the finding of the marijuana in her backpack as corroboration? No, Your Honor. No, because the search warrant affidavit for the M Hotel was obtained simultaneous to the search warrant affidavit or was contained in the same affidavit as the search warrant for her backpack. And what's notable about that is that the information that she provided about what they would find in her backpack was the basis for the search warrant to find that very methamphetamine that she could have been charged with. So the court had discussed and the government had cited in its brief issues of corroborating not only the individual's information, which the government just described, but also statements against penal interest corroborate or tend to provide the credibility and reliability that an individual, to the individual's information. And in this case, the methamphetamine that was located in her backpack was found by virtue of the statements that she provided to the law enforcement officers. She could have been lying about who she got it from. She already had lied. I mean, that's why I just don't, your argument that somehow the officer, you know, acted responsibly here I think is just not, I just don't find it persuasive. The conviction she had was highly relevant to assessing her credibility. And so the fact that she had already lied to an officer before to try to protect someone, obviously she could have been trying to protect someone else here and then dimed out Mr. Nichols instead of the real person that she got it from, for all the officers knew. Well, yes, Your Honor, but even if the court finds that the officer behaved in a reckless manner, that's not the end of the inquiry, particularly with regard to Franks and whether or not you're entitled to a hearing. That, those, that omission, were it to be included in the affidavit, would have to affect the probable cause calculus. And in this case, even if the court were to find that the officer behaved recklessly, that the inclusion of Ms. Bowen's criminal history would not have affected the probable cause calculus. Do we know what questions were asked of her that elicited the, both the admission of the, of the methamphetamine and who she bought it from, i.e., was she specifically, was she asked about this particular, Mr. Nichols particularly, or was it pointed out to her that she had been seen in front of Mr. Nichols' room? Yes. So the, the conversation that they had with Ms. Bowen came after their observations of her at the M Hotel. I, I won't be able to speak to what questions were specifically asked of Ms. Bowen. What I can speak to is the information that Officer Flohr provided in his telephonic affidavit regarding Ms. Bowen's statements. And those included that she had purchased $50 worth of methamphetamine from the defendant, that the methamphetamine . . . Those aren't the questions. That's what she said. But if, for example, they said, we saw you outside this room, room such and such where Mr. Nichols was, did you buy methamphetamine from him? That might be a different story from, you know, did you buy methamphetamine, who you buy it from? Yes, Your Honor. The, I don't have the answer to that question, Your Honor, simply because we're relying on the four corners of the affidavit here. And the information that was provided to the magistrate was not based on the types of questions asked, but rather the information obtained from Ms. Bowen. I would, I would note for Your Honors that the district court found that even if you were to include the omission or the criminal history for Ms. Bowen into the affidavit, it would not change. And part of the basis for that was not only the underlying facts of that conviction that she was in fact attempting to hide somebody from being located by the police, but also that her, I know that the court has before determined that perhaps the type of misstatement or the type of veracity issue can be fatal, but that's not necessarily true because the basis for finding probable cause in an affidavit is on the totality of the circumstances. So when you're looking at the totality of the circumstances, it's worth considering what type, what were the basis for that conviction and the district court did so here. And while the district court acknowledged that having a conviction for lying to the police is, is relevant, it is not fatal to the probable cause in this case. It depends on what other facts the officers have at their disposal to corroborate what the person has said. Yes, Your Honor. But, but the district court, I think, I can't remember for sure, but I thought the district court said, well, notwithstanding the nature of the conviction, it wouldn't have been relevant to an assessment of her credibility. And that cannot possibly be right. It's highly relevant. The question then just becomes, okay, this person is of sort of suspect believability. What do we have that convinces us that she's nonetheless telling the truth on this particular occasion? Yes, Your Honor. Um, if, if the court were to refer back to the district court's written findings in this case, um, I believe the court would find that the district court acknowledged that while the information related to Bowen's prior conviction may have been relevant to the magistrate's issuance of the warrant, um, it found that it was not determinative of that. Can I ask you to address the two instructional questions? Yes, Your Honor. One was the one that your opponent addressed and the other is the in-furtherance instruction. And why don't we start with the in-furtherance instruction because nobody has talked about it. Yes, Your Honor. Um, the instruction that was given, it seems to me the juror's reaction to it was quite correct. It doesn't explain anything because the, the second sentence, the one about you can consider the X, Y evidence, it's just a sufficiency. It comes out of the sufficiency cases, but it doesn't tell you what you're looking for. Right? So the question is, what are you looking for? And as to that, the only thing the judge said was you're looking for, uh, there has to be a connection. Well, that's not really accurate. It's not what the case law says. I mean, the case law, uh, tends to have some explanation of what furtherance means other than a connection, doesn't it? Well, I would, I would disagree in terms of the court's analysis that, uh, the did not accurately describe what the state of the law is. I didn't say that. I said, it isn't a description of what furtherance means. It's the description of what kind of evidence you can rely on to find furtherance, but first you have to know what furtherance means. Yes, Your Honor. But the reason that the district court included that particular information was based on an amalgamation of this, uh, circuit's case law. That's not what I'm objecting to. What I'm objecting to is the first sentence, i.e. what does furtherance mean? You, you can use, you can use different kinds of information to find out if it's furtherance, but first you have to find out, know what furtherance is. Well, Your Honor, um, the, in furtherance of, um, as the court went through that jury instruction, it states the requirement that, uh, the in furtherance of requires, or there must be a nexus. Um, and instead of using... So suppose the nexus was, um, somebody came to my room to, um, buy methamphetamine and he, he, he forgot his gun in the bathroom. Or he forgot his gun in, uh, next to my, uh, next to my, um, uh, in the place where they, they found it. I mean, that's a nexus, but is it in furtherance? Well, and that's why, um, the, the court not only started with the requirement of the connection, the nexus, but then went on to discuss, there's a totality of circumstances standard, um, and... But there's no explanation of what's in furtherance. Your Honor, but I would also note for the court that, um, the, the jury instruction itself, it wasn't clearly wrong. Um, it relied on cases that establish, um, uh, considerations for nexus, um, within the totality of the circumstances. United States versus Lopez says, to establish that Lopez possessed the firearm in furtherance of his drug crime, the government must show that Lopez intended to use the firearm to promote or to facilitate his possession of cocaine with intent to distribute. Now that explains what in furtherance is, right? And it, and it negates my example. Your Honor, yes. There's other language that the court could have used, um, that maybe, uh, this court would have preferred that the court use. However, the gov, uh, the, uh, as the case law has established, the district court is the governor of the trial. The language that the defendant wanted, um, he's not entitled necessarily to, so long as the information that was provided is correct. Um, I would also note for the court. The language the defendant asked for wasn't too helpful either because it defined in furtherance by furthering, which I use the same language. So that wasn't too helpful either. Um, but I, I don't understand how you define in furtherance as a connection that's not accurate. Is it? It's inaccurate to say that in furtherance means a connection. Um, it is accurate, Your Honor. Why is it accurate? Um, it's accurate because, uh, in furtherance of requires something more than mere possession, which I know has been emphasized by the defense. Right. Of what more? Not just a connection. Well, but that's, but then to describe further, that's when the court goes into the totality of the circumstances and some of the considerations. Okay. What about the, um, the lesser included offense? Now I understand that there may have been really, really strong evidence that he possessed it to distribute. But one has to assume here that you're dealing, you're trying this to a jury because a jury could not believe some of this really, really strong evidence. Otherwise you'd just lock them up without having a jury trial. So, um, therefore if the jury can not believe some of this really, really strong evidence, why don't you give the, um, lesser included offense? Well, I, I disagree with the court's premise that, um, there would be no point to have a jury trial if the government is, or if the evidence is so strong, um, the defendant elected to, to do that. So the government did put on its evidence, that evidence, um, the requirement is not just that there was some evidence in the record that the defendant possessed, uh, the methamphetamine for his personal use. The standard is whether or not, um, the jury could rationally find that the defendant was guilty of simple possession and still acquit him of the greater offense. And in this case, Your Honor, um, there was so much evidence that the defendant possessed with intent to distribute, including his own statements that he distributed the evidence, that there's a rational jury could not find. But, but if they believed his evidence that he possessed it as to how much he was dealing, then they would never acquit him in the first place of the possession with, with, of the, of the distribution, right? And they didn't acquit him, Your Honor. Okay. But one has to assume here that they, they, they don't believe it. Um, could they convict him of something less? No, Your Honor. And it's not, it's not just that they don't believe his statements. Um, you have the amount of, uh, methamphetamine seized, uh, combined with scales found at both locations, combined with baggies found at both locations, those baggies matching the same baggies that were located on, uh, Ms. Bowen at the time that they found her methamphetamine, as well as Carolyn Merrill, um, at the Day's Inn Hotel, those baggies matched. Uh, you have the ledgers that detailed the drug distribution. But what you're saying is there's no way they were going to acquit him. No, what I'm saying is there's no way the jury could have acquitted him of the greater and found him guilty of the lesser, which is the standard. And that is governed by an abusive discretion standard when the district court found, uh, based on the evidence, uh, at, at the trial that that was not possible. Okay. Your time is up. Thank you. We'll give one of you a minute, if you'd like it. I appreciate that, Your Honor. I'll, I'll try to be brief. First, with respect to the government's point that once the officers established probable cause, they don't need to do anything else. I think that's dead wrong. I think it's the magistrate who, a properly informed magistrate who has all relevant facts and circumstances, who's supposed to make the decision, not the officers for themselves. And then they get to bury their heads in the sand and avoid unpleasant information about an informant's reliability in criminal history. With respect to the issue of Ms. Bowen making a declaration against her penal interest, number one, she was never charged with it. And number two, the court was asking questions about, uh... What difference does that make? It was against her penal interest. I think it's relevant because, well, it, it may have been against her penal interest somewhat, but, uh, courts distinguish between statements that are genuinely against a declarant's penal interest versus statements that point the finger at someone else. They distinguish between saying, I did something and someone saying, uh, this was my source of supply. He sold me drugs. Statements made in a sense to curry favor with law enforcement. I think that's what was going on here. Unfortunately, we don't have sufficient facts in the record to make that out and to get at the questions that law enforcement was asking Ms. Bowen at the time, because we didn't get a hearing. I think that's the purpose of, uh, of having a hearing. And we could have asked the officer those types of questions. I see that my time's up. I thank the court. Thank you both for your arguments and, uh, helpful arguments. And we will, uh, submit the case of United States versus Nichols and we are in recess for a little while. Thank you. Okay.
judges: Berzon, Watford, Rothstein